DECISION AND JUDGMENT ENTRY
Iris Norris and Robert Boling appeal the termination of their parental rights and the grant of custody of their children to Athens County Children Services ("ACCS") by the Juvenile Division of the Athens County Court of Common Pleas. Ms. Norris assigns the following error:
 I. THE EVIDENCE DID NOT SUPPORT THE DECISION OF THE COURT BY THE REQUISITE STANDARD OF PROOF, IN FINDING THAT THE CHILDREN COULD NOT BE REUNIFIED WITH A PARENT WITHIN A REASONABLE PERIOD OF TIME.
Mr. Boling assigns the following errors:
 I. THE JUVENILE COURT ERRED IN FINDING THAT "ATHENS COUNTY CHILDREN SERVICES DID MAKE REASONABLE EFFORTS TO REUNIFY THE CHILDREN WITH THEIR PARENTS."
 II. THE JUVENILE COURT ERRED IN FINDING THAT "REASONABLE EFFORTS TO EFFECTUATE REUNIFICATION WOULD BE FUTILE IN THIS CASE."
 III. THE JUVENILE COURT ERRED IN FINDING THAT BILLY BOLING AND ROBERT BOLING CANNOT BE PLACED WITH THEIR PARENTS WITHIN A REASONABLE TIME AND THAT THEY SHOULD NOT BE PLACED WITH THEIR PARENTS.
 THE JUVENILE COURT ERRED IN ADOPTING THE ATHENS COUNTY CHILDREN SERVICES' FINDINGS OF FACT AND CONCLUSIONS OF LAW THEREBY THE FAILING [sic] TO MAKE IT'S [sic] OWN INDEPENDENT FINDINGS OF FACT AND CONCLUSIONS OF LAW.
In light of the priority status of this case, we deviate from our normal practice and provide a review of the record and applicable law as an Appendix, which we incorporate in our decision.
 I.
In her assignment of error, Ms. Norris argues that the evidence presented did not support the finding that the children could not be reunified with either parent within a reasonable period of time. Ms. Norris contends that the court, in making its permanent custody determination, should only have considered the evidence occurring at or after the time of the second "taking" of the children in October 1999. She further submits that the events which occurred between October 1999 and the permanent custody hearing were insufficient to support the court's decision. We disagree.
In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. State v. S.R. (1992), 63 Ohio St.3d 590,594. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. In re Hayes (1997), 79 Ohio St.3d 46, 48, citing S.R., supra, at 594-595. In interpreting a statute, words and phrases shall be read in context and construed according to the rules of grammar and common usage. Independent Ins. Agents of Ohio, Inc. v. Fabe (1992),63 Ohio St.3d 310, 314; R.C. 1.42. Courts do not have the authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but must give effect to the words used. Wrayv. Wymer (1991), 77 Ohio App.3d 122, 130. In other words, courts may not delete words used or insert words not used. Cline v. Ohio Bur. of MotorVehicles (1991), 61 Ohio St.3d 93, 97.
R.C. 2151.414(E) specifically states that the court "shall consider allrelevant evidence" in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. (Emphasis added). Ms. Norris has not cited any cases which indicate that the evidence can only consist of information obtained at the time of or after the child's removal and the statute clearly does not place such limitations on the court. Evid.R. 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Events occurring prior to removal of a child may well fit this definition and are not inadmissible per se because of their chronology.
Once the court finds that one or more of the situations outlined in R.C. 2151.414 (E)(1) through (16) exists, the court shall enter a finding that the child cannot or should not be placed with either parent. Here, as applicable to Ms. Norris, the court found that (E) (1), (2), (3), (8), (9), (14), (15) and (16) were all present. R.C. 2151.414(E)(1) is the only one of these provisions to require that the children services agency develop a case plan and make diligent efforts to remedy the problems that initially caused the child's removal from the home. A determination that this section is applicable can only be made if the parent has continuously and repeatedly failed to substantially remedy the conditions that caused the child to be placed outside his or her home. In this limited context, the court would be required to look only at the parent's conduct after removal of a child and development of a case plan in determining whether to award permanent custody to an agency.
In finding that this provision applied, the court relied on events that occurred from November 1997, when the children were initially removed, until the hearing. Based on Ms. Lehman's and Ms. Gribble's testimony, the court found that ACCS had diligently assisted Ms. Norris in remedying the problems in her home. The court found that despite this assistance, Ms. Norris failed to provide a stable home for the children and failed to protect them from harm. Specifically, the court found that Ms. Norris continued drinking though instructed not to by the court and ACCS on numerous occasions, continued associating with alcohol and drug abusers creating a dangerous environment for the children, and failed to attend parenting classes resulting in her lack of ability to properly care for her children. The court's determination that R.C. 2151.414(E)(1) is applicable is supported by competent, credible evidence and must be upheld.
In reaching this determination, the court properly relied on events occurring before Ms. Norris regained custody of her children in May 1999. The "initial removal" of the children occurred in November 1997. The children were returned to Ms. Norris but the case was not closed at that point and ACCS retained protective supervision over the children. InIn re Mark H. (Apr. 30, 1999), Lucas App. No. L-98-1238, unreported, the Sixth District reversed the trial court's grant of permanent custody when the court relied on events occurring in a prior, closed case because the appellant's children had been returned to her without conditions. Here, however, Ms. Norris was still required to comply with her case plan and was still receiving services from ACCS. Therefore, based on the plain language of R.C. 2151.414(E)(1), the court was authorized to consider the events occurring at the time when the children were first removed from Ms. Norris' home.
Furthermore, even if the court should have considered the initial placement under (E)(1) to be in October 1999, the court found that other provisions, which do not include similar limitations, also applied. R.C.2151.414(E)(2) provides that the court should not place the child with his or her parent if the parent's chronic chemical dependency is so severe that she cannot currently or within one year provide an adequate home for the child. The court found, and the evidence supports the finding, that Ms. Norris is an alcoholic and chemically dependent. The court noted that Ms. Norris admitted drinking on several occasions after she was ordered not to. Perhaps most importantly, Ms. Norris has failed to recognize that she is an alcoholic even though virtually every witness, including her own grown children, declared her to be one.
The court found that Ms. Norris made several contradictory statements regarding the extent and length of her drinking. Further, the court found that Ms. Norris minimized the amount of alcohol she'd consumed when she was "caught" by Ms. Wikle and rejected treatment from RWRP even after she was told she could lose custody of her children if she did so. In sum, the court concluded that Ms. Norris' testimony that she now has control over her consumption of alcohol is not credible given her history of severe alcoholism and chemical dependency, her contradictory statements, and her continued associations with those who contribute to or allow her to be dependent. Since Ms. Norris is still unwilling to acknowledge and successfully treat her problem, she is unable to provide an adequate home for the children and will likely not be able to within the next year. These findings are also supported by competent, credible evidence.
Because we have found that the court's determination that R.C.2151.414(E)(1) and (2) apply is supported by competent, credible evidence, we need not determine whether (E)(3),(8),(9),(14),(15), and (16) are applicable. If the court finds that even one of these conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
According to Ms. Norris, her friends and family, she is attempting to turn her life around. However, there is also evidence that Ms. Norris has made numerous such attempts and failed over the years. Further, even if Ms. Norris is no longer drinking, she admits that she is still associating with people that she has been ordered not to see and has failed to comply with other requirements of her case plan, including attending parenting classes. These failures prevent her from providing the adequate permanent home that her children need. As the choice between conflicting testimony of witnesses rests solely with the finder of fact, an appellate court many not substitute its judgment for that of the trier of fact. State v. Awan (1986), 22 Ohio St.3d 120, 123. Therefore, we rely on the trial court's determination regarding the credibility of Ms. Norris' testimony.
 II.
In his third assignment of error, Mr. Boling contends that the court erred in finding that Billy and Robert cannot be placed with their parents within a reasonable time and that they should not be placed with their parents. As pertains to Mr. Boling, the court found that R.C.2151.414(E)(2),(3),(4),(10),(12),(14) and (15) apply. Mr. Boling contends that none of these factors are present and the court should have awarded him custody of the boys upon his release from SEPTA.
The court made various findings to support its conclusion that these factors were present. The court found that Mr. Boling is an alcoholic and chemically dependent. Further, the severity of his abuse makes him unable to care for his children now and in the upcoming future. The court also found that Mr. Boling committed many acts of abuse towards Ms. Norris and the children as a result of his alcoholism. The court noted that the boys have had no contact whatsoever with Mr. Boling since November 1997. While it is true that a restraining order was in place preventing such contact, Mr. Boling never made any attempts to contact the court or ACCS to remove or lessen the restraining order. The court also found that "Mr. Boling's eleventh hour repentance is unconvincing." This statement indicates that the court did not credit Mr. Boling's testimony regarding his control over his alcoholism and drug abuse and his ability to provide a stable home for the boys upon release from prison. Again, the court was the trier of fact and was free to discount Mr. Boling's testimony.
R.C. 2151.414(E)(15) states that if the court finds that the parent has committed abuse or allowed the child to suffer neglect, and the court determines that the seriousness, nature or likelihood of the recurrence of the abuse or neglect makes the child's placement with the parent a threat to the safety of the child, the court must find that the child cannot or should not be placed with the parents. Here, there was ample testimony that Mr. Boling had virtually no positive interaction with his children even when he resided with them. There was also testimony that Mr. Boling shoved food in Robert's face because he was not eating fast enough and held him over a well, and that Mr. Boling slapped the children. In addition, Ms. Norris' grown daughters testified that Mr. Boling regularly abused Ms. Norris in front of the children, causing them to scream and cry. There was also testimony that the children witnessed Mr. Boling beating Ms. Norris almost to death in November 1997 and the children suffered serious psychological damage as a result of this experience. Mr. Boling testified that he turned his life around in prison but it is clear that the trial court did not credit this testimony. There is competent, credible evidence to support the lower court's finding that Mr. Boling abused and neglected his children. Furthermore, the seriousness and frequency of the abuse and neglect provides amble support for the court's finding that placing the boys with Mr. Boling would seriously endanger their health and safety. Because there is competent, credible evidence to support the conclusion that R.C. 2151.414(E)(15) is present and only one factor need be found under R.C. 2151.414(E), we need not determine whether the remaining factors found by the court are also present.
 III.
We conclude that there is competent, credible evidence that at least one factor listed in R.C. 2151.414(E) is present here as pertains to Mr. Boling and to Ms. Norris. Mr. Norris' whereabouts are unknown and he has had no contact with Kristal so clearly she cannot be placed with him. Because sufficient evidence supports the trial court's findings, we hold that the court did not err in finding that the children could not be placed with either parent within a reasonable time and that they should not be placed with their parents.
Ms. Norris' assignment of error is overruled and Mr. Boling's third assignment of error is overruled.
 IV.
In his first and second assignments of error, Mr. Boling contends that the court erred in finding that ACCS made reasonable efforts to reunify the children with him and in finding that reasonable efforts to effect reunification would be futile.
R.C. 2151.419(A) directs the trial court at any hearing where the child is committed to the permanent custody of an agency to determine whether the agency has made reasonable efforts to return the child home. An implied exception may exist where reasonable efforts would be futile. SeeIn re Crosten (Mar. 21, 1996), Athens App. No. 95CA1692, unreported. However, the appearance of futility may be furthered by agency acts or omissions. In re Stevens (July 16, 1993), Montgomery App. No. 13523, unreported. Trial courts should be cautious in finding that reasonable efforts would have been futile where an agency ignores a natural parent.Id. In In re Efaw (Apr. 21, 1998), Athens App. No. 97CA49, unreported, we cautioned trial courts that where an agency has chosen to ignore a natural parent, a finding of futility should be made only after careful consideration of how the agency's inaction contributes to the appearance of futility.
Here, the trial court found that efforts to reunite the boys with their father would be futile because Mr. Boling is a chronic alcoholic with deep-seated anger problems who severely beat Ms. Norris where the children could see and hear his actions. Based on these facts and the testimony of Ms. Norris, Anita Hudnell, and Karen Blevins, as well as Mr. Boling's own testimony, the court found that reunification would have been futile. We agree.
Mr. Boling asserts that ACCS took no actions to determine his release date and should have included him in the case plan for reunification. However, the evidence shows that ACCS knew Mr. Boling was incarcerated for a relatively lengthy period. Ms. Gribble testified that she recorded in the case file that Mr. Boling was found guilty of his crime and would be incarcerated for four years. Further, one of the early case plans noted that Mr. Boling was currently incarcerated and Ms. Lehman testified that she phoned the prison in December 1999 and was told that Mr. Boling would not be released for two more years. Mr. Boling faults ACCS for not learning that he had been judicially released. However, this occurred after the motion for permanent custody had been filed and only shortly before the hearing. ACCS had no reason to believe that Mr. Boling would be released any sooner than 2002.
In Efaw, supra, we indicated that agencies should either adopt reunification plans involving fathers or explicitly state in the case plan why it would be futile to do so. While it may not have been explicit, the case plan indicated that Mr. Boling was incarcerated and all the parties involved knew Mr. Boling's legal status. Given that this status was not scheduled to change for some time, it is clear why ACCS did not include Mr. Boling in the reunification plan with Ms. Norris. Furthermore, in Efaw, we found that the father's lack of interest in his son, failure to communicate with him, failure to financially support him, and history of alcohol abuse, drug abuse, and crime supported the court's finding of futility despite the children services agency's failure to include him in the case plan. Here, Mr. Boling had a history of alcohol and drug abuse, a severe temper, was physically abusive to Ms. Norris and the children, and had failed to communicate with his children in two-and-a-half years. Further, the evidence showed that the boys had virtually no relationship with their father even when he was living with them. Therefore, the court's finding that reasonable efforts to reunite the boys with their father would be futile is supported by competent, credible evidence.
Because we agree with the trial court that reasonable efforts to reunite the boys with Mr. Boling would have been futile, we need not determine whether the court correctly found that ACCS made reasonable efforts to reunite Robert and Billy with their father.
Mr. Boling's second assignment of error is overruled and his first assignment of error is moot.
 V.
In his fourth assignment of error, Mr. Boling argues that the court erred in adopting ACCS's findings of fact and conclusions of law and not making independent findings. We disagree.
In Kaechle v. Kaechle (1991), 72 Ohio App.3d 267, the appellate court held that while the blanket adoption of one party's proposed findings of fact breeds error, the practice does not constitute error per se and was not an abuse of discretion. We acknowledge that the trial court substantially adopted ACCS's findings of fact and made only some minor changes. However, where proposed findings of fact and conclusions of law are an accurate reflection of the record and the law, it is not error for the trial court to adopt them. Therefore, we overrule Mr. Boling's fourth assignment of error.
 VI.
Having found no merit in any of Ms. Norris or Mr. Boling's assignments of error, we affirm the judgment of the trial court granting permanent custody of the children to ACCS and terminating the appellants' parental rights.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
Kline, P.J. Evans, J.: Concur in Judgment and Opinion
 __________________________ William H. Harsha, Judge